

# THE ATTORNEY GENERAL
## OF TEXAS

GERALD C. MANN  
XXXXXXXXXXXXXXXXXXXXXXXXX  
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Honorable D. C. Greer  
State Highway Engineer  
Texas Highway Department  
Austin, Texas

Dear Mr. Greer:

Opinion No. 0-5329  
Re: Departmental Appropriation Bill of 1943. From what fund shall legislative appropriation for the Texas Defense Guard Workmen's Compensation be paid? Appropriation for administration of Certificate of Title Act.

Your letter of July 19, 1943, submits the following questions for the opinion of this department:

1. Out of what fund is the appropriation for administering Workmen's Compensation Act for the Texas Defense Guard to be paid, under the provisions of Senate Bill No. 332, Acts Regular Session, 48th Legislature?

2. How much money has been appropriated by such Bill for the administration of the Certificate of Title Division?

First Question:

The rider involved reads as follows:

"There is hereby appropriated for each year of the Biennium beginning September 1, 1943, and ending August 31, 1945, the sum of Fifty Thousand ($50,000) Dollars for the uses and purposes of, and carrying out the provisions of Senate Bill No. 135, Acts of the Regular Session of the 48th Legislature no salaries shall be paid from this appropriation. This appropriation, however, is contingent upon such Bill becoming a law, and should such Bill not become a law this appropriation shall be of no force or effect, and no part thereof shall be expended."

Senate Bill No. 135 has already become a law. The difficulty in determining from what fund the moneys appropriated shall come arises from that part of the Highway appropriation section of the Departmental Appropriation Act which reads as follows:

"All revenues, fees, and grants in aid received for credit to the State Highway Fund during the biennium beginning September 1, 1943, together with the balance of such funds on hand at the beginning of each year of

the biennium, are hereby appropriated <u>for the payment of the specific</u>
<u>appropriation herein made for the State Highway Department and the Depart-</u>
ment of Public Safety, and for the establishment of a system of State
Highways and the planning, construction, and maintenance thereof as con-
templated and set forth in Chapter 1, Title 116, and Chapter 186, General
Laws of the R<sub>e</sub>gular Session of the Thirty-ninth Legislature, and amendments
thereto."

We believe that the appropriation for carrying out the provisions
of Senate Bill No. 135 will come from the General Fund and not from the State
Highway Fund for the following reasons:

The Act does not say that all appropriations to the State Highway
Department shall come out of the State Highway Fund, but that such fund is ap-
propriated "for the payment of <u>specific appropriations</u> herein made." We
believe that the term "specific <u>appropriations</u>" refers only to the 164 item-
ized appropriations for different employees and for operating expenses set out
in detail in the first part of the Highway Department section of the Act. If
it were applicable to all appropriations, including the riders, there would
have been no occasion for the Legislature to have inserted the word "specific."
Such word would have been superfluous.

We are strengthened in this interpretation by the fact that there
are appended to the 164 itemized expenditures six riders calling for appropria-
tions for various purposes and every one of these except the rider in question
specifies from what fund the appropriation shall come. Four of these set out
that the appropriations are from the State Highway Fund; the fifth specifies
that it is from the General Revenue Fund. If it had been intended that all
appropriations to the State Highway Department were to come out of the State
Highway Fund, the use of the term "specific appropriations" and the specifica-
tion in four separate riders that the appropriations were out of the State
Highway Fund would have been mere surplusage. Under the rule that a statute
will be construed to give effect to all of its parts, we do not feel justified
in adopting such a construction.

The purpose of Senate Bill 135, which is to provide workmen's compen-
sation for the Defense Guard, is so remote from any duty pertaining to highways
that we do not feel justified in reading into the Appropriation Act an intention
to put the entire expense of administering this aid to the Defense Guard upon
the State Highway Fund. Although the Guard on occasion of violence from within
or without the State would defend the State Highways, yet such defense would be
no different from what it would render to all property within the State, public
or private.

Senate Bill 135, itself, carried an appropriation of $15,000 from
the General Revenue Fund to effectuate the Act until August 31, 1943. The fact
that the Legislature in creating workmen's compensation for the Defense Guard
and in making the initial appropriation did not provide that it should come
from the State Highway Fund is evidence, in the absence of language to the con-
trary, in the Departmental Appropriation Bill that the funds therein appropriated
were to come out of the General Fund.

Section 1 of the Departmental Appropriation Bill in its opening sentence provides that appropriations therein made are to come out of the General Revenue Fund unless otherwise specified. Said sentence reads as follows:

"Section 1. That the several sums of money herein specified or so much thereof as may be necessary, are hereby appropriated out of the moneys in the State Treaaury, not otherwise appropriated in the General Revenue Fund or Special Funds as may be shown, for the support and maintance of the several departments and agencies of the State Government, for the two-year period beginning September 1, 1943, and ending August 31, 1945."

Second Question:

The riders appended to the appropriation for the State Highway Department, made by Senate Bill No. 332, include the following:

"All revenues, fees, and grants in aid received for credit to the State Highway Fund during the biennium beginning September 1, 1943, together with the balance of such funds on hand at the beginning of each year of the biennium, are hereby appropriated for the payment of the specific appropriations herein made for the State Highway Department and the Department of Public Safety, and for the establishment of a system of State highways and the planning, construction, and maintenance thereof as contemplated and set forth in Chapter 1, Title 116 and Chapter 186, General Laws of the Rgular Session of the Thirty-ninth Legislature, and amendments thereto. Provided, however, that an amount not to exceed One Hundred Seventy-five Thousand ($175,000.00) Dollars is hereby appropriated for the Certificate of Title Division.

"There is hereby appropriated under and by virtue of House Bill No. 205, Acts of the Regular Session of the Forty-seventh Legislature, sufficient highway funds to carry out the terms and provisions of said Act, and the State Highway Department is hereby expressly authorized to employ a sufficient number of employees necessary to carry out the terms and provisions of said Act, but in no event shall salaries be paid in excess of the amount paid for the same or similar positions in any department of the State Government."

By the provisions of Section 57 of the Certificate of Title Act, twenty-five (25¢) cents of each fifty (50¢) cents collected from an applicant for a Certificate of Title, or re-issuance thereof, is to be forearded to the Highway Department for deposit to the State Highway Fund, and from such fees the Department, under the provisions of said Section, is entitled to use sufficient money to pay all expenses necessary to efficiently administer and perform the duties required by the Certificate of Title Law.

The effect of this Section is to require the establishment of a special account within the State Highway Fund. The fees provided are deposited to the credit of this special account within the Highway Fund, and are dedicated to the payment of the expenses necessary to efficiently administer

the Certificate of Title Law.

The State Highway Fund proper is a special fund within the State treasury which derives its revenues from motor vehicle registration fees and gasoline taxes, and is by law set aside specifically for the construction and maintenance of a system of State highways. Vernon's Revised Civil Statutes, Article 6674, Article 6674q-5, Article 6694. The $175,000.00 appropriation is phrased in terms of its proviso. A proviso is construed in connection with the section or clause with which it forms a part. Its office or function is to limit or restrict the meaning of that which has gone before. It is to be given effect, if possible, according to the clear meaning of the language used. Tidewater Oil Co. v. Bean, (Civ. Apps.) 148 S.W. (2) 184.

The section of the rider to which the $175,000.00 appropriation is appended appropriates all revenues, fees and grants in aid received for credit to the State Highway Fund, together with the balance on hand in the fund, to purposes which do not include the expenditure of such moneys for the operation of the Certificate of Title Act. The language of the $175,000.00 appropriation begins with the words "Provided, however, . . ." indicating clearly the legislative intent to impose a limitation or restriction upon that which it had done in the sentence preceding. The proviso is to be construed as limiting the authority previously conferred by the appropriation of the whole Highway Fund, by providing that $175,000.00 of such fund should be devoted to purposes not included in the appropriation made by the first sentence, to-wit, to the administration of the Certificate of Title Act.

The first sentence of this paragraph of the rider can have the legal effect of appropriating only that part of the Highway Fund which is not dedicated by law to purposes other than the purposes for which the appropriation therein made, for the reason that the terms of existing law may not be changed by an appropriation bill. State v. Steele, 57 Tex. 203; Linden v. Finley, 92 Tex. 454; Conley v. Daughters of the Republic, 151 S. W. 883; Opinions of the Attorney General, 1916-18, p. 119; 1928-30, p. 209, Letter Book 60, p. 24; 1934-46, p. 46; Opinion No. O-2573. The appropriation in the first sentence can not be made out of that part of the Highway Fund which is composed of fees deposited therein, under the terms of Section 57 of the Certificate of Title Act, for such fees by such Section, though deposited in the Highway Fund, are dedicated by that Section to the payment of expenses of administration of the Certificate of Title Act.

For the same reason, though the Legislature by the proviso indicated clearly an intent to subject the entire Highway Fund to the payment of the $175,000.00 appropriated to the Certificateof Title Division, since that portion of the fund not composed of fees collected under Section 57 of the Certificate of Title Act can not by the appropriation bill be devoted to the purpose of administering the Certificate of Title law, the proviso is valid only to appropriate the $175,000.00 from that part of the Highway Fund composed of fees collected under Section 57 of the Certificate of Title Act.

The result is that we have two appropriations for the Certificate of Title Division from Certificate of Title fees in the Highway Fund:

1. The proviso limiting the appropriation to $175,000.00.

2. The paragraph following the proviso, which authorizes expenditure of sufficient Certificate of Title fees out of the Highway Fund to administer the Act.

Since there is a direct conflict between these two provisions, which can not be resolved by the application of any other rule of statutory construction, we must apply the rule that in case of conflict between provisions of the same enactment, the provision last in point of position in the Act controls, on the theory that it is the latest expression of the legislative will. Stevens v. State, 159 S.W. 505. Thus the proviso is superseded by the paragraph succeeding it.

It has been suggested that the fonflict is to be resolved by regarding the proviso as an appropriation from the General Fund. To this we can not agree. It is not the province of construction to vary the meaning of unambiguous language in order to avoid conflict between portions of the law. This is legislation -- not interpretation.

During the present fiscal biennium the Legislature has appropriated for the administration of the Certificate of Title law all fees collected and deposited under Section 57 thereof. During the fiscal year 1941-1942, such receipts amount to $342,181.75; the expenditures for the same period, $185,765.15. Down through July 1, 1943, the receipts for the fiscal year 1942-1943 were $153,617.75; the expenditures, $87,544.47. The balance currently on hand in the Certificate of Title fee account is approximately $270,000.00. It is a matter of common knowledge that the heaviest burden involved in the administration of the Certificate of Title law -- the original registration of titles on all automobiles in this State -- has been practically discharged, and that the work is now settling down to that involved in the routine transfer of titles. Since the burden of work in the administration of the Act will be much less than that involved in the first years following its enactment, it is unreasonable to impute to the Legislature an intent to appropriate $175,000.00 in addition to all fees collected and deposited under Section 57 of the Act.

We answer your first question that the $50,000.00 appropriated for administering Senate Bill No. 135, Acts of the 48th Legislature, Regular Session, is an appropriation from the General Revenue Fund.

We answer your second question that there is appropriated by Senate Bill 332, for the ensuing biennium, for the administration of the Certificate of Title Act all fees collected under Section 57 theeof, that this is the only appropriation made for the administration of the Certificate of Title Law.

APPROVED AUG 5, 1943
/s/ GROVER SELLERS
FIRST ASSISTANT
ATTORNEY GENERAL
RWF-MR:egw

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ R.W. Fairchild
R.W. Fairchild
Assistant